## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |  |
|---|---|---|---|
| PETE BELLOTTI, on behalf of himself and all others similarly situated, | : |  |  |
|  | : |  |  |
|  | : | Civil Action No. | 2:21-cv-1045 |
| Plaintiff, | : |  |  |
| v. | : |  |  |
|  | : |  |  |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC., | : |  |  |
|  | : |  |  |
| Defendants. | : |  |  |
|  | : |  |  |

### CLASS ACTION COMPLAINT

Plaintiff Pete Bellotti ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (Royal Philips, Philips NA, and Philips RS are referred to herein as "Philips" or the "Defendants"), and alleges the following based on personal knowledge, the investigation of his counsel, and information and belief.

### INTRODUCTION

1.      Plaintiff, a purchaser and user of one of the Philips products at issue, brings this action on behalf of himself, and a proposed class and subclass of purchasers and users of the following: Continuous Positive Airway Pressure (CPAP), Bi-Level Positive Airway Pressure (Bi-Level PAP) devices, and mechanical ventilators produced by Philips containing polyester-based polyurethane sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed that there were risks the PE-PUR Foam used in certain of its CPAP, Bi-Level PAP, and mechanical ventilator products may degrade or off-gas under certain circumstances.

3.      On June 14, 2021, Royal Philips issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator products containing PE-PUR Foam.  Philips announced the recall because it had determined that (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation. Philips further disclosed in its Recall Notice that "these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."

4.      Philips also stated that not being able to see particles in the devices does not mean that PE-PUR Foam was not breaking down. Philips also reported that laboratory analysis of degraded foam revealed the presence of harmful chemicals, including Toluene Diamine ("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").

5.      Users of the products had complained to Philips about black debris/particles in the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Philips also received reports of headaches, upper airway irritation, cough, chest pressure and sinus infection from users of these devices.

6.      In its Recall Notice, Philips disclosed that the potential risks of particulate exposure to users of its CPAP, Bi-Level PAP, and mechanical ventilator products include irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic affects.  The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include headache/dizziness,

irritation (eyes, noses, respiratory tract, skin), hypersensitivity, nausea/vomiting, and toxic carcinogenic effects.

7.     Philips recommended that users of the recalled CPAP and Bi-Level PAP devices immediately discontinue use and that patients using the recalled ventilators to sustain life consult with their physicians regarding options.

8.     Plaintiff seeks to recover damages caused by Philips' breach of express warranty, breach of implied warranties, misrepresentations, and omissions, in connection with its producing, marketing and selling products containing PE-PUR Foam, both for himself and the proposed Class and Subclass.

## PARTIES

9.     Plaintiff Pete Bellotti is a citizen and resident of the Commonwealth of Massachusetts.

10.     Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory Care. Royal Philips, directly or indirectly, owns 100% of its subsidiaries Philips NA and Philips RS. Upon information and belief, Royal Philips controls Philips NA and Philips RS in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level PAP, and mechanical ventilator devices.

11.     Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips.

12.    Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly-owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc., which Royal Philips acquired in 2008.

## JURISDICTION AND VENUE

13.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (b) the action is a class action, (c) there are members of the Class and Subclass who are diverse from Defendants, and (d) there are more than 100 class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

14.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c), because a Defendant is located in this District, Defendants transact business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and because the Defendants caused harm to class members residing in this District.

15.    The Court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District. Moreover, Defendant Philips RS has its principal place of business in this District. Defendants Philips RS and Philips NA are controlled by their parent Royal Philips. Defendants' affiliations with this District are so continuous and systematic as to render them essentially at home in this District. Further, Defendants have transacted business, maintained substantial contacts, purposefully targeted

consumers and medical professionals for sales of its devices or committed overt acts in furtherance of the unlawful acts alleged in this Complaint in this District. The unlawful acts of Defendants have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District, as well as throughout the United States.

## FACTUAL BACKGROUND

### I.      Continuous Positive Airway Pressure Therapy

16.      Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a hose and a nasal or facemask device that delivers constant and steady air pressure to an individual's throat to help the person breathe.

17.      Sleep apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout the sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses, which prevents oxygen from reaching the lungs. This oxygen deprivation can cause a buildup of carbon dioxide. When the brain senses the buildup of carbon dioxide, it will briefly rouse a person from sleep so that his or her airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including having a negative effect on a person's energy level, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the airway from collapsing during sleep cycles, which can help prevent interruptions in breathing.

### II.      Bi-Level Positive Airway Pressure Therapy

18.      Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical

and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP therapy is distinguishable from CPAP therapy in that Bi-Level PAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into the airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. The expiratory positive airway pressure is applied to allow a person to comfortably breathe out.

### III.   Mechanical Ventilation

19.     Mechanical ventilation is a treatment to helps people breathe when they find it difficult or unable to breathe on their own. A mechanical ventilator pushes airflow into the lungs to help breathing. Mechanical ventilation may be invasive ventilation, where a tube is inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

### ALLEGATIONS AGAINST PHILIPS

20.     Philips developed, produced, marketed, and sold CPAP and Bi-Level PAP products and mechanical ventilators under the "Sleep & Respiratory Care" segment of its business.  These products were designed to assist people with sleep, breathing, and respiratory conditions, such as obstructive sleep apnea, central sleep apnea, complex sleep apnea syndrome, and Chronic Obstructive Pulmonary Disease (COPD), as well as to assist those individuals requiring invasive and non-invasive ventilators for acute and sub-acute hospital environments. Philips' CPAP and Bi-Level PAP products and its mechanical ventilators typically cost several hundred, if not thousands of dollars. Philips has sold millions of these products in the United States.

## I.  **Philips' Products Put Users at Risk of Harm**

21.     On April 26, 2021, in its Quarterly Report Philips disclosed for the first time, under a section entitled "Regulatory Update," that reports from product users had led to a discovery that the type of PE-PUR Foam Philips used to minimize noise in several CPAP and Bi-Level PAP respirators and mechanical ventilators posed health risks to their users. Philips stated that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."

22.     On June 14, 2021, Philips announced a recall of numerous models of CPAP and Bi-Level PAP devices and mechanical ventilators "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices.  Philips stated that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals." In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.

23.     Philips recalled the following products (the "Recalled Products"):

| CPAP and Bi-Level PAP Products | |
| --- | --- |
| **Name and Model Type** | **Type** |
| E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory |
| DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| DreamStation ST, AVAPS | |
| SystemOne ASV4 | |
| C Series ASV | |
| C Series S/T and AVAPS | |
| OmniLab Advanced Plus | |

| CPAP and Bi-Level PAP Products | |
| --- | --- |
| **Name and Model Type** | **Type** |
| SystemOne (Q Series) | Non-continuous Ventilator |
| DreamStation | |
| DreamStation GO | |
| Dorma 400 | |
| Dorma 500 | |
| REMStar SE Auto | |

| Ventilators | |
| --- | --- |
| **Name and Model Type** | **Type** |
| Trilogy 100 Ventilator | Continuous Ventilator |
| Trilogy 200 Ventilator | |
| Garbin Plus, Aeris, LifeVentVentilator | |
| A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto | |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | |

24.     According to Philips, the PE-PUR Foam used in Recalled Products puts users at risk of suffering from: "[i]rritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."

25.     Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."

26.     Further, Philips stated that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact,

from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment."

27.     Philips had received complaints from users of Recalled Products who suffered from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."

## II.     The Health Risks Associated with Use of the Recalled Products Renders Them Worthless

28.     As a result of the health risks associated with the use of the Recalled Products, together with Defendants' concealment of these risks from the date they were first reported to or discovered by Defendants through April 26, 2021, the Recalled Products have been rendered completely worthless or, at the very least, have been substantially diminished in value.

29.     The information described above, including the now-known health risks of using Philips CPAP, Bi-Level PAP, and mechanical ventilator products, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Products worthless to patients with sleep apnea and respiratory conditions. Individuals not using life-supporting ventilators must immediately discontinue their use of the Recalled Products or face serious health risks as grave as organ failure or cancer. If they choose to discontinue use of the Recalled Products, they must pay for another expensive device in order to receive effective treatment for their sleep apnea or other respiratory conditions. Individuals using life-supporting ventilators must seek an alternative treatment before discontinuing use of the Recalled Products.

30.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Products:

- "**For patients using BiLevel PAP and CPAP devices:** Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."

9

- **"For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps."**

31.     As a result of the above, Plaintiff and the Class and Subclass will have to undertake considerable expense replacing the Recalled Products.

### III.    <u>Philips Unreasonably Delayed its Recall</u>

32.     At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Products that the PE-PUR Foam in the products may off-gas or degrade upon use. Prior to the Update Philips also did not disclose any health risks associated with use of the Recalled Products.

33.     Defendants have not disclosed when they first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

34.     As a result of user reports, Defendants were aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Products at some point prior to the recall, yet continued to manufacture and sell the Recalled Products.  During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Products and unreasonably put users of the Recalled Products at risk of serious adverse health effects, including organ failure and cancer.

### <u>PLAINTIFF'S ALLEGATIONS</u>

35.     Plaintiff was diagnosed with sleep apnea in 2016 and used the recalled Philips DreamStation CPAP device nightly beginning in 2016. Plaintiff was unaware of the health risks from using the DreamStation CPAP.

36.     The manuals accompanying Plaintiff's DreamStation CPAP device did not contain any discussion or warning of health risks associated with use of the device, such as irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic effects. Had Defendants informed Plaintiff of these risks, he would not have purchased or used the recalled DreamStation CPAP product.

37.     Plaintiff experienced eye and nose irritation, as well as chest pressure from using the DreamStation CPAP product.

38.     Upon learning of the product recall, Plaintiff ceased using the DreamStation CPAP product in or around July 2021.

39.     As a result of the now disclosed health risks associated with use of this device and the recall, Plaintiff's DreamStation CPAP is worthless.

## TOLLING AND ESTOPPEL

### I.     DISCOVERY RULE TOLLING

40.     Plaintiff and the Class and Subclass had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Products.

41.     Neither Plaintiff nor any other members of the Class or Subclass, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further, Plaintiff and members of the Class and Subclass did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

42.     For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiff, the Class, and Subclass.

11

## II.      <u>FRAUDULENT CONCEALMENT TOLLING</u>

43.      By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Products, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiff and the members of the Class and Subclass.

44.      Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiff and members of the Class and Subclass. Plaintiff and the members of the Class and Subclass were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Class or Subclass should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

45.      Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). Plaintiff seeks class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS**: All persons in the United States who purchased or used a CPAP, Bi-Level PAP, or Mechanical Ventilator product manufactured or sold by Philips before April 26, 2021, and recalled by Philips on June 14, 2021.

46.      Plaintiff seeks certification on behalf of a subclass defined as follows (the "Subclass"):

**MASSACHUSETTS SUBCLASS**: All persons who were or are citizens of the State of Massachusetts who purchased or used a CPAP, Bi-Level PAP, or Mechanical Ventilator product manufactured or sold by Philips before April 26, 2021, and recalled by Philips on June 14, 2021.

47.      Excluded from the Class and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and

any entity in which any Defendants or their parents have a controlling interest, as well as

Defendants' current or former employees, agents, officers, and directors; (c) persons who

properly execute and file a timely request for exclusion from the Class or Subclass; (d) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e)

counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of

any such excluded persons.

48.     **Numerosity (Rule 23(a)(1))**. The Class and Subclass are so numerous that

joinder of individual members herein is impracticable. The exact number of members of the

Class and Subclass, as herein identified and described, is not known, but sales figures and the

Recall Notice indicate that millions of individuals have purchased the Recalled Products.

49.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each

cause of action and predominate over questions affecting only individual Class and Subclass

members, including the following:

- whether Defendants owed a duty to Plaintiff and the Class and Subclass;
- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement could degrade into particles that could enter users' bodies;
- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;
- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Products was safe;
- whether the Recalled Products retained any value post-recall;
- whether Defendants wrongfully represented that the Recalled Products were safe to use;
- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Products posed health risks to users;
- whether Defendants' representations and omissions in advertising, warranties, packaging, and/or labeling were false, deceptive, or misleading;
- whether those representations and omissions were likely to deceive a reasonable consumer;
- whether a reasonable consumer would consider the presence, or risk of, negative health effects from use of the products as a material fact in purchasing one of the Recalled Products;

- whether Defendants had knowledge that those representations and omissions were false, deceptive, or misleading;
- whether Defendants breached their express warranties;
- whether Defendants breached their implied warranties;
- whether Defendants engaged in false advertising;
- whether Defendants' conduct was negligent per se;
- whether Defendants made negligent or fraudulent misrepresentations or omissions; and
- whether Plaintiff and the members of the Class and Subclass are entitled to actual, statutory, or punitive damages.

50.     **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of the other members of the proposed Class and Subclass. Plaintiff and members of the Class and Subclass (as applicable) suffered injuries because of Defendants' wrongful conduct that is uniform across the Class and Subclass.

51.     **Adequacy (Rule 23(a)(4))**. Plaintiff's interests are aligned with the Class and Subclass he seeks to represent. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained competent counsel highly experienced in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interests of the Class and Subclass. Plaintiff has no interest that is antagonistic to those of the Class and Subclass, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class and Subclass.

52.     **Superiority**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class and Subclass is impracticable. The prosecution of separate actions by individual members of the Class and Subclass would impose

heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class and Subclass, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

53.     **Manageability.** This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

54.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>
**BREACH OF EXPRESS WARRANTY**
**(on behalf of the Class and Subclass)**

55.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

56.     Philips marketed and sold the Recalled Products into the stream of commerce with the intent that the Recalled Products would be purchased by Plaintiff and the Class and Subclass.

57.     Philips expressly warranted, advertised, and represented to Plaintiff and the Class and Subclass that the Recalled Products were safe and appropriate for use.

58.     Additionally, on behalf of the Massachusetts Subclass, Philips made an affirmation or promise relating to its goods, which became part of the basis of the bargain that the goods would conform to the affirmation or promise, pursuant to M.G.L.A. 106 § 2-313(1)(a).

59.     Philips made these express warranties to the Class and Subclass regarding the Recalled Products' quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the Recalled Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class and Subclass entered into upon purchasing the Recalled Products.

60.     Philips' advertisements, warranties, representations, and omissions regarding health risks associated with the Recalled Products, were made in connection with the sale of the Recalled Products to Plaintiff and the Class and Subclass. Plaintiff and the Class and Subclass relied on Philips' advertisements, warranties, representations, and omissions regarding the Recalled Products in deciding whether to purchase and use Philips' Recalled Products.

61.     Philips' Recalled Products do not conform to Philips' advertisements, warranties, representations, and omissions in that they are not safe, healthy, and appropriate for use, and pose risks of serious injury and disease, including organ failure and cancer.

62.     Philips therefore breached its express warranties by placing Recalled Products into the stream of commerce and selling them to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. The associated health effects substantially impair the use, value, and safety of the Recalled Products, and render them worthless.

16

63. Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Products, but nowhere on the package labeling or package inserts or on Philips' websites or other marketing materials did Philips warn Plaintiff and members of the Class and Subclass that they were at risk of developing adverse health effects because of the dangerous PE-PUR Foam used in the Recalled Products.

64. Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Products and deceptively represented that these products were safe and appropriate for use. Philips thus utterly failed to ensure that the material representations they were making to consumers were true.

65. The adverse health effects associated with use of the Recalled Products existed when they left Philips' possession or control and were sold to Plaintiff and members of the Class and Subclass. The dangers associated with use of the Recalled Products were undiscoverable by Plaintiff and members of the Class and Subclass at the time of purchase of the Recalled Products.

66. As manufacturers, marketers, advertisers, distributors and sellers of the Recalled Products, Philips had exclusive knowledge and notice of the fact that the Recalled Products did not conform to the affirmations of fact and promises.

67. In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations and omissions to induce Plaintiff and members of the Class and Subclass to rely on such representations and omissions.

68. Philips' affirmations of fact and promises and its omissions were material, and Plaintiff and members of the Class and Subclass reasonably relied upon such representations and omissions in purchasing and using the Recalled Products.

69.     All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiff or members of the Class or Subclass.

70.     Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice from user reports and its lab testing that the PE-PUR Foam in the Recalled Products was unsafe. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Products to make them safe and healthy for use by Plaintiff and members of the Class and Subclass, but failed to do so and instead recalled the products.

71.     As a direct and proximate result of Philips' breaches of express warranty, Plaintiff and members of the Class and Subclass have been damaged because they did not receive the products as specifically warranted by Philips. Plaintiff and members of the Class and Subclass did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Products.

72.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (on behalf of the Class and Subclass)

73.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Class and Subclass.

75.     There was a sale of goods from Philips to Plaintiff and the Class and Subclass.

76.     At all times mentioned herein, Philips manufactured or supplied the Recalled Products, and prior to the time the Recalled Products were purchased by Plaintiff and the Class

and Subclass, Philips impliedly warranted to them that the Recalled Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact and omissions made on the Recalled Products' labels and packaging, including that the Recalled Products were safe and appropriate for use. Plaintiff and the Class and Subclass relied on Philips' promises and affirmations of fact and omissions when they purchased and used the Recalled Products.

77.     Contrary to these representations and warranties, the Recalled Products were not fit for their ordinary use and did not conform to Philips' affirmations of fact and promises and omissions because use of the Recalled Products is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of these devices.

78.     Philips breached its implied warranties by selling Recalled Products that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each Recalled Products was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

79.     Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Products through user reports submitted to Philips and through laboratory testing.

80.     Privity exists because Philips impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Recalled Products were natural, and suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of the Recalled Products.

81.     Additionally, on behalf of the Massachusetts Subclass, Philips merchanted with respect to the Recalled Products that they were fit for the ordinary purpose for which such goods

are used and that they were of the quality promised within their description, pursuant to

M.G.L.A. 106 § 2-314(b-c).

82.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and

Subclass have suffered actual damages in that each Recalled Device they purchased is worth less

than the price they paid and which they would not have purchased had they known of the

attendant health risks associated with the use of each Recalled Device.

83.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs,

and any other just and proper relief available thereunder for Philips' failure to deliver goods

conforming to their implied warranties and resulting breach.

**COUNT III**
**FRAUDULENT MISREPRESENTATION**
**(on behalf of the Class and Subclass)**

84.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

85.     Philips failed to advise Plaintiff and the Class and Subclass that the Recalled

Products posed serious health risks to their users and Philips falsely represented to Plaintiff and

the Class and Subclass that the Recalled Products were safe for use.

86.     Philips intentionally, knowingly, and recklessly made these misrepresentations and

omissions to induce Plaintiff and the Class and Subclass to purchase the Recalled Products.

87.     Philips knew that its representations and omissions about the Recalled Products

were false in that the Recalled Products contained PE-PUR Foam and thus were at risk of causing

adverse health effects to users of the Recalled Products, which does not conform to the products'

labels, packaging, advertising, and statements. Philips knowingly allowed its packaging, labels,

advertisements, promotional materials, and websites to intentionally mislead consumers, such as

Plaintiff and the Class and Subclass.

20

88.     Plaintiff and the Class and Subclass did in fact rely on these omissions and misrepresentations and purchased and used the Recalled Products to their detriment. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Products, Plaintiff' and the Class' and Subclass' reliance on Philips' omissions and misrepresentations was justifiable.

89.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and Subclass have suffered actual damages in that they purchased the Recalled Products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known of the health risks, including organ failure and cancer, associated with the use of the Recalled Products, and (c) which did not conform to the Recalled Products' labels, packaging, advertising, and statements.

90.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

**<u>COUNT IV</u>**
**FRAUD BY OMISSION**
**(on behalf of Class and Subclass)**

91.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

92.     Philips concealed from and failed to disclose to Plaintiff and the Class and Subclass that use of Recalled Products is accompanied by a risk of adverse health effects, which does not conform to the products' labels, packaging, advertising, and statements.

93.     Philips was under a duty to disclose to Plaintiff and the Class and Subclass the true quality, characteristics, ingredients and suitability of the Recalled Products because: (a) Philips was in a superior position to know the facts about its products; (b) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of the Recalled Products for use by individuals; and (c) Philips knew that Plaintiff and the Class and

Subclass could not reasonably have been expected to learn or discover prior to or after purchasing the Recalled Products that there were misrepresentations and omissions by Philips in the packaging, labels, advertising, and websites regarding the health risks associated with use of these devices.

94.     The facts concealed or not disclosed by Philips to Plaintiff and the Class and Subclass were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Recalled Products.

95.     Plaintiff and the Class and Subclass justifiably relied on Philips' omissions to their detriment. The detriment is evident from the true quality, characteristics, and risk associated with the use of the Recalled Products, which is inferior when compared to how the Recalled Products are advertised and represented by Philips.

96.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and Subclass have suffered actual damages in that they purchased the Recalled Products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known of the health risks associated with the use of the Recalled Products, and (c) which do not conform to the Recalled Products' labels, packaging, advertising, and statements.

97.     Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### (on behalf of the Class and Subclass)

98.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

99.     Philips had a duty to Plaintiff and the Class and Subclass to exercise reasonable and ordinary care in the developing, testing, manufacturing, marketing, distributing, and selling the Recalled Products.

100.     Philips breached its duty to Plaintiff and the Class and Subclass by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class and Subclass that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Products from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Products.

101.     Philips knew or should have known that the qualities and characteristics of the Recalled Products were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips. Specifically, Philips knew or should have known that: (a) the use of the Recalled Products was accompanied by risk of adverse health effects that do not conform to the packaging and labeling; (b) the Recalled Products were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (c) the Recalled Products were otherwise not as warranted and represented by Philips.

102.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and Subclass have suffered actual damages in that they purchased the Recalled Products (a) that were worth less than the price they paid, (b) which they would not have purchased at all had they known they contained PE-PUR Foam that could cause users of the Recalled Products to suffer adverse health effects, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

103.    Plaintiff and the Class and Subclass seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VI
## UNJUST ENRICHMENT
### (on behalf of the Class and Subclass)

104.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

105.    Plaintiff and the Class and Subclass conferred substantial benefits on Philips through their purchase of the Recalled Products. Philips knowingly and willingly accepted and enjoyed these benefits.

106.    Philips either knew or should have known that the payments by Plaintiff and the Class and Subclass were given with the expectation that the Recalled Products would have the qualities, characteristics, and suitability for use represented and warranted by Philips. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

107.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiff and the Class and Subclass.

108.    Plaintiff and the Class and Subclass are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Philips as to each and every count, including:

A.    An order certifying this action for the Class and Subclass requested herein as a class action, designating Plaintiff as representatives of the Class and Subclass, and appointing Plaintiff's counsel as counsel to the Class and Subclass;

24

B.      An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; (v) negligent misrepresentation; and (vi) unjust enrichment, and that Philips is liable to Plaintiff and the Class and Subclass, as described herein, for damages or equitable relief arising therefrom;

C.      A judgment awarding Plaintiff and members of the Class and Subclass all appropriate damages in an amount to be determined at trial;

D.      A judgment awarding Plaintiff and the Class and Subclass prejudgment and post-judgment interest, as permitted by law;

E.      A judgment awarding Plaintiff and the Class and Subclass costs and fees, including attorneys' fees, as permitted by law; and

F.      Grant such other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.


Dated: August 5, 2021

*/s/ Edwin J. Kilpela, Jr.*
Gary F. Lynch
Edwin J. Kilpela, Jr.
Elizabeth Pollock-Avery
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412-322-9243
glynch@carlsonlynch.com
ekilpela@carlsonlynch.com
eavery@carlsonlynch.com

Jonathan M. Jagher
D. Patrick Huyett
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6486
jjagher@fklmlaw.com
phuyett@fklmlaw.com

William E. Hoese
Craig W. Hillwig
Aarthi Manohar
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: (215) 238-1700
whoese@kohnswift.com
chillwig@kohnswift.com
amanohar@kohnswift.com

*Attorneys for Plaintiff*